IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Larry Julian Martin, | ) | C/A No.: 1:11-2390-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a

Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)

(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to

obtain judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). The two issues before the court are whether the

Commissioner's findings of fact are supported by substantial evidence and whether he

applied the proper legal standards. For the reasons that follow, the undersigned

recommends that the Commissioner's decision be reversed and remanded for further

proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

        On March 26, 2009, Plaintiff filed applications for DIB and SSI under the Social

Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c. Tr. at 120–29. In his

applications, he alleged his disability began on August 31, 2007. Tr. at 120, 124. His applications were denied initially and upon reconsideration. Tr. at 55–58. On January 28, 2011, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"). Tr. at 24–54 (Hr'g Tr.). The ALJ issued an unfavorable decision on February 24, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 16–23. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on September 7, 2011. [Entry #1].

B.      Plaintiff's Background and Medical History

1.      Background

Plaintiff was 54 years old at the time of the hearing. Tr. at 30. He graduated from high school. Tr. at 32. His past relevant work ("PRW") was as a carpenter. Tr. at 150. Although his application alleged his disability began on August 31, 2007, he amended his onset to August 31, 2008, at the hearing. Tr. at 39.

2.      Medical History

a.      Records of the Medical University of South Carolina

Plaintiff was hospitalized at the Medical University of South Carolina on September 1, 2008, after he was struck by lightning and fell while working on his roof. Tr. at 206. He presented with electrical burns to his bilateral upper extremities and underwent wound care during his hospitalization. Tr. at 206–07. A cervical CT scan on

September 1, 2008, revealed degenerative changes of the cervical spine at C4–C5 and C5–C6, but no evidence of spinal cord compression. Tr. at 238. A CT scan on September 7, 2008, documented a stable splenic laceration and an incidental finding of thrombosis in the right renal vein ascending into the inferior vena cava ("IVC"), which was treated with placement of an IVC filter and anticoagulant medication. Tr. at 208, 211, 234. Plaintiff was kept in the hospital because of the incidental finding. *Id.* He was discharged on September 12, 2008 in stable condition with diagnoses of electrical burns to bilateral extremities, grade 3 splenic laceration, multiple rib fractures, and transverse process fracture. Tr. at 207, 209. He was instructed to undergo a follow-up CT of his abdomen and pelvis in six weeks and encouraged to see his primary physician for blood pressure control. Tr. at 208.

Thereafter, Plaintiff was treated with anticoagulant medication between September 11, 2008, and September 23, 2009. Tr. at 247–70, 312–18, 321.

Matthew Reese, M.D., examined Plaintiff on December 8, 2008, for complaints of eye crusting lesions. Tr. at 213–15, 227–28. Plaintiff reported a history of HIV. Tr. at 213. Examination revealed uncorrected visual acuity of 20/20 in the right eye and 20/25 in the left eye. *Id.* Dr. Reese diagnosed left herpes zoster ophthalmicus with epithelial and conjunctival involvement, but without retinal, optic nerve, or cranial nerve involvement, for which he prescribed medication. Tr. at 214.

Christian Todd Minshall, M.D., examined Plaintiff on November 30, 2009, for follow-up of his burns and renal thrombus. Tr. at 310–11. Dr. Minshall noted Plaintiff

3

had undergone right hand surgery, and subsequently developed a right middle finger contracture. Tr. at 310. He also noted that Plaintiff had been on anticoagulant medication for his renal thrombus, but had failed to follow up with examinations or a scheduled CT scan, and had discontinued the anticoagulant medication independently. *Id.* Examination revealed the absence of lower extremity edema or swelling bilaterally. *Id.* Dr. Minshall ordered a CT scan to evaluate for a residual clot, but concluded that there was no indication to restart anticoagulation medication. *Id.*

Stephanie C. Montgomery, M.D., examined Plaintiff on April 5, 2010, for follow-up of his burns and renal thrombus. Tr. at 334. Dr. Montgomery noted that Plaintiff had self-discontinued anticoagulation medication and was interested in finding out whether he needed to continue with the medication. *Id.* She also noted that the visit with her was the third time Plaintiff had made this inquiry, that he had been advised previously that he needed to undergo a CT scan in order to make this determination, and that he had not pursued the CT scan or the last several clinic visits and missed follow-up appointments, including the follow-up for his hand. *Id.* Examination revealed that Plaintiff was unable to extend his right, middle finger. *Id.* Dr. Montgomery ordered an abdominal/pelvic CT scan, which revealed widely patent iliac veins, IVC, and bilateral right renal veins. Tr. at 334, 336. There was no evidence of right renal vein thrombosis. Tr. at 336.

b. Records of Julia S. Haile, M.D.

Records of Julia S. Haile, M.D., a specialist in infectious diseases, between January 21, 2009, and October 13, 2010, revealed treatment with medication for HIV and

dermatomal herpes zoster or shingles of the trigeminal (pertaining to a cranial nerve) nerve on the left. Tr. at 280–84, 299, 323, 338.

At Plaintiff's initial consultation on January 21, 2009, Dr. Haile noted evidence of active zoster with some swelling and redness of the skin and a great deal of pain. Tr. at 283. Plaintiff's joints and other skin appeared normal and his chest was clear. *Id.* Dr. Haile indicated that most of the visit was spent discussing some of Plaintiff's socioeconomic problems. *Id.* She prescribed medication and provided a pharmaceutical assistance voucher. Tr. at 284.

On April 20, 2009, Plaintiff reported moving back into his own home and doing yard work. Tr. at 281. Dr. Haile noted that Plaintiff looked much better and that he was applying for disability because he previously worked as a steelworker on structures like the Cooper River Bridge and was no longer able to do that. *Id.*

At a visit on June 3, 2009, Dr. Haile noted Plaintiff was feeling "very well" and that his HIV seemed stable, but that his blood pressure was slightly elevated and he had some neuralgia from the zoster. Tr. at 280.

On September 9, 2009, Dr. Haile observed that Plaintiff's skin looked wonderful, he had very little pain, and he was getting along very well. Tr. at 299. The doctor noted that Plaintiff was applying for disability based on the burn injury to his right hand and commented, "He is certainly disabled for work now." *Id.*

Plaintiff followed up with Dr. Haile on February 24, 2010. Tr. at 323. He reported getting lots of exercise and riding a bicycle. *Id.* He stated that he would enjoy

gardening when the weather returned and was trying to decrease the amount of beer he was drinking because he thought it was interfering with his sleep. *Id.* Dr. Haile noted that Plaintiff had some neuralgia associated with the old left trigeminal zoster. *Id.*

On October 13, 2010, Plaintiff's biggest complaint was occasional pain in his left eye after zoster for which Neurontin had been a benefit. Tr. at 338. Dr. Haile noted that Plaintiff was 100% compliant with his regimen and had normal heart sounds and a clear chest. *Id.* The doctor further noted that Plaintiff's left eye looked fine and his skin was well healed. *Id.*

c.      Records of Ettaleah Bluestein, M.D.

Ettaleah Bluestein, M.D., an ophthalmologist, examined Plaintiff on March 30, 2009, for complaints of pain and photophobia. Tr. at 199–201. Plaintiff reported a history of HIV diagnosed in 2004, treated with medication. Tr. at 200. Examination revealed uncorrected visual acuity of 20/30- in the right eye and 20/40 in the left eye. *Id.* Dr. Bluestein diagnosed, among other diagnoses, HIV and left herpes zoster virus opthalmicus, which she treated with medication. Tr. at 199, 201.

d.      Physical Residual Functional Capacity Assessments

On July 27, 2009, Jean Smolka, M.D., a state agency physician, completed a Physical Residual Functional Capacity ("RFC") Assessment and concluded that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand, walk, or sit about six hours in an eight-hour workday; perform gross and fine manipulation/operation of controls with the right upper extremity frequently; climb

ramps/stairs, balance, stoop, kneel, crouch, and crawl frequently; and never climb ladders/ropes/scaffolds or work around hazards such as machinery or heights. Tr. at 288–95. Dr. Smolka found no visual, communicative, or other manipulative or environmental limitations. *Id.*

On May 3, 2010, Tom Brown, M.D., a state agency physician, concurred with Dr. Smolka's July 27, 2009 Physical RFC Assessment. Tr. at 325–32.

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the January 28, 2011, hearing, Plaintiff testified that he had limited use of his right middle finger due to a burn injury sustained when he was struck by lightning while working on the roof of his house. Tr. at 34, 41–43. He also testified that he previously had shingles and continued to have facial pain, for which he took medication. Tr. at 36–37, 40. He further testified that he had a history of renal vein thrombosis, but that he no longer needed to take Coumadin for that condition. Tr. at 40–41. He also said he had pain in his neck on the right side. Tr. at 43–44. Plaintiff stated that he lived alone, had a driver's license, and had driven during the relevant time period, but that he did not drive currently because he did not have a car. Tr. at 30. He also stated that he earned money performing odd jobs such as raking; selling scrap metal; and housecleaning, including putting out trash and mopping. Tr. at 31, 43. He further stated that he was right-hand dominant, but was able to use the left upper extremity to assist the right hand. Tr. at 32,

41, 44. He testified that after using his right hand for three or four hours, he would need to rest it for 30 minutes. Tr. at 42–43. He stated that he had a history of incarceration for domestic violence and child support violations. Tr. at 33.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Robert Graybom reviewed the record and testified at the hearing. Tr. at 47–52. The VE categorized Plaintiff's PRW as a carpenter as medium, skilled work. Tr. at 48. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could sit, stand, and walk six hours in an eight-hour day with normal breaks; lift 25 pounds occasionally and ten pounds frequently; must avoid crawling and climbing ropes, ladders, and scaffolds; frequently use his right upper extremity, but with a contracture of the middle finger of the right hand cannot do work requiring strong grip or fine fingering such as keyboarding; has no impairment of his left upper extremity and has strong grip and can use it as a helper; and must avoid hazards such as dangerous moving machinery and unprotected heights. Tr. at 49. The ALJ asked whether there were any jobs that the hypothetical person could perform. *Id.* The VE identified the following light, unskilled jobs: hand packer (DOT 920.687-166) (10,000 jobs in South Carolina; 375,000 nationally); production inspector (DOT 222.687-042) (9,000 jobs in South Carolina; 345,000 nationally); and parking lot attendant (DOT 915.473-010 (1,000 jobs in South Carolina; 37,000 nationally). Tr. at 50. The VE testified his response would not change if the hypothetical individual had to avoid sharp moving edges. *Id.*

8

Plaintiff's counsel then asked the VE what impact the inability to use both hands to lift, reach, and carry things would have on the occupational base at the light work level. Tr. at 51. The VE testified that such a limitation had the potential to be problematic in most, if not all, light exertion-level jobs. *Id.*

2.    The ALJ's Findings

In her February 24, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since August 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairment: contracture of right middle finger (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to sit for 6 hours in an 8 hour day, and stand and walk for 6 hours in an 8 hour day with the freedom to change positions every 30 minutes. The claimant is able to lift and carry up to 25 pounds occasionally and 10 pounds frequently. He may perform postural activities frequently, although is restricted from crawling and climbing ropes, ladders, or scaffolds. The claimant can frequently use his right upper extremity; however, with contracture of his right middle finger, cannot do work requiring a strong grip or fine fingering, such as using a keyboard. The claimant does not have an impairment of his left upper extremity, and has a strong grip strength and can use it as a helper. The claimant should avoid hazards such as unprotected heights and dangerous moving machinery.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on October 19, 1956, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 16–23.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ presented an incomplete hypothetical to the VE;

2)    the ALJ failed to consider all of Plaintiff's impairments; and

3)    the ALJ failed to consider Plaintiff's impairments in combination.

The Commissioner counters that substantial evidence supports the ALJ's findings

and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those]

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant

---

criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for

the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.      Analysis

1.      The ALJ Posed an Incomplete Hypothetical to the VE

Plaintiff argues the ALJ's decision is not supported by substantial evidence because although she found in her RFC assessment that Plaintiff needed the freedom to change positions every 30 minutes, she did not include that limitation in the hypothetical she presented to the VE. [Entry #20 at 5–7]. Plaintiff further argues that without a complete hypothetical, the VE could not have given an opinion as to whether the limitations presented were consistent with the Dictionary of Occupational Titles and the opinion may not be relied on in support of the ALJ's decision. *Id.* at 6–7. The Commissioner acknowledges the sit/stand option was not included in the hypothetical to the VE, but contends the limitation was inadvertently included in the RFC assessment and is not supported by the Physical RFC Assessments to which the ALJ assigned significant weight. [Entry #21 at 19–21]. The Commissioner further contends the error was harmless and does not require remand. *Id.*

Among other limitations, the ALJ found that Plaintiff had the residual functional capacity to sit, stand, and walk for six hours in an eight-hour day "with the freedom to

14

change positions every 30 minutes." Tr. at 19. The ALJ subsequently found that Plaintiff was not able to return to his past relevant work. Tr. at 21. Thus, the burden shifted to the Commissioner to show that other jobs exist in significant numbers in the national economy that Plaintiff can perform based on his RFC, age, education, and work experience. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls*, 296 F.3d at 290. The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Johnson*, 434 F.3d at 659 (quoting *Walker*, 889 F.2d at 50); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

Here, the Commissioner admits that a limitation found in the RFC assessment was not included in the hypothetical to the VE, but contends the limitation requiring a sit/stand option was included in the RFC assessment in error. [Entry #21 at 20–21]. Relying on out-of-circuit cases, he argues the deficiency does not require reversal. *Id.* at

20.  The cases relied upon, however, all hold that a deficiency in opinion writing does not require reversal where the deficiency has no bearing on the outcome.  *Id.*  The Commissioner further argues that Plaintiff has failed to demonstrate that he was harmed by the ALJ's inadvertent inclusion of the sit/stand option in the RFC assessment.  *Id.* at 21.

While there is no clear record evidence supporting the ALJ's inclusion of a sit/stand option in the RFC assessment, the ALJ's error—whether in including the limitation in the RFC assessment or failing to include it in the hypothetical—warrants remand.  Plaintiff has documented degenerative spinal changes that could arguably support such a finding.  Tr. at 238.  If the ALJ intended to include the limitation, her failure to include it in the hypothetical is reversible error.  *See Swaim*, 599 F.2d at 1312.  Even if the undersigned could conclusively determine the ALJ did not intend to include the limitation in the RFC assessment, the out-of-circuit case law cited by the Commissioner is inapposite because it applies only where the deficiency has no bearing on the outcome.  In the present case, the alleged deficiency in the ALJ's decision has a direct bearing on the sufficiency of the VE testimony relied upon by the ALJ in finding Plaintiff not disabled.  For the foregoing reasons, the undersigned is constrained to recommend remanding this case to the ALJ for further consideration.  On remand, the ALJ should clearly articulate whether she is including a sit/stand option in her RFC assessment.  If so, she should pose a hypothetical to the VE that includes all limitations found in the RFC assessment.

2. The ALJ Did Not Properly Consider Plaintiff's Impairments in Combination

Plaintiff argues that the ALJ's failure to consider the combined effects of his alleged severe and non-severe impairments requires remand. [Entry #20 at 8]. The Commissioner argues the ALJ's RFC assessment is supported by substantial evidence. [Entry #21 at 17–18].

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker*, 889 F.2d at 50; *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In this case, the ALJ specifically addressed numerous impairments alleged by Plaintiff, including contracture of the right middle finger, HIV, zoster, and renal

thrombosis, at step two of his decision. Tr. at 18. Other than conclusory statements that she considered the combined effects of Plaintiff's impairments in her listing analysis, the ALJ made no findings regarding the combined effects of Plaintiff's severe and non-severe impairments. In her RFC assessment, she made no mention of any impairment other than the contracture of Plaintiff's right middle finger and did not make any representation regarding considering all of Plaintiff's impairments in combination in determining his RFC.

The Commissioner's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523. Here, the ALJ failed to consider or, at least failed to articulate whether and how she considered Plaintiff's multiple impairments together, thereby violating 20 C.F.R. § 404.1523, which provides as follows:

> **Multiple Impairments.** In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, *the combined impact of the impairments will be considered throughout the disability determination process.* If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id.* (italics added); *see also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process.").

Citing to an out-of-circuit case, the Commissioner appears to argue that the ALJ properly considered Plaintiff's impairments in combination by considering them separately. [Entry #21 at 17–18]. The law in the Fourth Circuit is clear: in-turn consideration of multiple impairments is insufficient. The underlying ALJ decision in *Walker* included discussion of each of claimants' impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49–50. The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.* Even if the court were to accept the Commissioner's argument, the out-of-circuit case law is inapplicable to the present facts because the ALJ did not consider Plaintiff's non-severe impairments of HIV, zoster, and renal thrombosis separately or in combination in her RFC assessment.

For the foregoing reasons, the undersigned recommends remand to the ALJ for her consideration of all of Plaintiff's severe and non-severe impairments combined. The ALJ should specifically consider the synergistic effect all impairments may have on Plaintiff's ability to work. This must be done in connection with all steps in the sequential evaluation process. By recommending further analysis of Plaintiff's impairments in

combination, the undersigned does not suggest that his combined impairments necessitate a finding of disability.

On remand, the ALJ should also address whether the cervical spine changes noted on Plaintiff's MRI dated September 1, 2008 (Tr. at 238), constitute a severe impairment and to consider any resulting functional limitations in combination with Plaintiff's other impairments.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 24, 2012                                    Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).